**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| G. MARISA KELLY-PIMENTEL, | ) | |
| | ) | No. 2:19-cv-00481-RJC |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Judge Robert J. Colville |
| | ) | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court are Defendant Pennsylvania Department of Corrections' ("DOC") Motion for Summary Judgment (ECF No. 61) and Plaintiff G. Marisa Kelly-Pimentel's ("Dr. Kelly") Motion to Supplement the Summary Judgment Record (ECF No. 80). The Motions have been fully briefed and are ripe for disposition.

## I.  Introduction and Factual Background

### A.  Procedural History

This employment discrimination action was initiated by Dr. Kelly with the filing of a Complaint on April 26, 2019. (ECF No. 1). Dr. Kelly then filed her Amended Complaint on November 17, 2020. (ECF No. 36). Counts I and III allege race discrimination in violation of Title VII; Counts II and IV allege retaliation in violation of Title VII; and Count V alleges disparate impact race discrimination in violation of Title VII.

DOC filed its Motion for Summary Judgment (ECF No. 61) with Brief in Support (ECF No. 62), as well as a Concise Statement of Material Facts (ECF No. 63) ("Def. SOMF"), and an Appendix (ECF No. 64). Dr. Kelly filed a Response to DOC's Motion (ECF No. 70), a response

1

to DOC's Concise Statement of Material Facts (ECF No. 71) ("Pl. Response to Def. SOMF"), a Concise Statement of Additional Material Facts (ECF No. 72) ("Pl. Stmt. of Add'l Facts"), a Brief in Opposition (ECF No. 73), and an Appendix (ECF No. 74). In reply, DOC filed a response to Dr. Kelly's Concise Statement of Additional Material Facts (ECF No. 79) ("Def. Resp. to Pl. Add'l Facts").

### B. Factual Background

Unless otherwise noted, the following facts are not in dispute.

Dr. Kelly, an African American female, is currently employed by DOC as an Adult Basic Education Teacher at the State Correctional Institute ("SCI") at Greene. Def. SOMF, ℙℙ 1, 10. Dr. Kelly has been employed by DOC since 1998 and has worked as a Commonwealth of Pennsylvania employee since 1987. Def. SOMF, ℙ 10; Pl. Stmt. of Add'l Facts, ℙ 2. While working for DOC, Dr. Kelly worked as a School Principal at SCI at Greene from 1998-2001 and as an Academic Counselor at SCI at Pittsburgh from 2001-2004. Def. SOMF, ℙ 12. Dr. Kelly was then hired in her current role as an Adult Basic Education Teacher in 2004. *Id.* While working as an Academic Counselor, Dr. Kelly also filled in as a School Principal. Pl. Stmt. of Add'l Facts, ℙ 6. Further, while working as an Adult Basic Education Teacher, Dr. Kelly filled in as an interim School Principal. *Id.* at ℙ 7.

Dr. Kelly has her Doctorate in Education, a master's degree in Education, and a bachelor's degree in Education. Pl. Stmt. of Add'l Facts, ℙ 9. She also has certificates from the Pennsylvania Department of Education for Instructional I teacher, Instructional II teacher, Principal, and a Superintendent Letter of Eligibility, which were earned in 1980, 2007, 2004, and 2012 respectively. *Id.* at ℙ 10.

The two failures to hire at issue in this lawsuit concern the 2016 Director position with the Bureau of Correction Education ("BCE") and the 2016 Western Region Education Administration Manager ("EAM") position.  Def. SOMF, at ¶¶ 36, 56.  The BCE is "responsible for directing, monitoring and assisting state prisons in the delivery of educational, vocational and library services."  *Id.* at ¶ 4.  The BCE is headed by a director and immediately below the director are three EAMs.  *Id.* at ¶ 5-6.

### 1.  2016 Director BCE Position

On April 27, 2016, Dr. Kelly applied for the Director BCE position.  *Id.* at ¶ 23.  The minimum qualifications for the position were "[e]ight years of professional experience in the field of education, including four years in an administrative or supervisory capacity and a master's degree; with major course work in education and education administration earned at either the undergraduate or graduate level; or any equivalent combination of experience and training."  Pl. Stmt. of Add'l Facts, ¶ 47.  Dr. Kelly was selected to be interviewed for the Director BCE position before Executive Deputy Secretary Shirley Moore Smeal and former Regional Deputy Secretary Steve Glunt.  *Id.* at ¶ 26.  Six other individuals—all white—were also interviewed for the Director BCE Position.  Pl. Stmt. of Add'l Facts, ¶ 95.  Ms. Moore Smeal and Mr. Glunt took notes during the candidate interviews.  *Id.* at ¶ 66.  Dr. Kelly alleges DOC was required to retain these interview notes but failed to do so and, as a result, Dr. Kelly is seeking a spoliation charge.  *Id.* at ¶¶ 68-69.  DOC disputes the allegations that it was required to retain these interview notes.  Def. Resp. to Pl. Add'l Facts, ¶¶ 68-69.

Terri Fazio was ultimately selected for the Director BCE position.  Def. SOMF, ¶ 32.  Ms. Fazio has been employed by DOC since 1990 and held the positions of Adult Basic Education Teacher from 1990-2005, part time Academic Counselor from 1998-2004, Corrections School

3

Principal from 2005-2014, Central Office Staff Assistant for three months in 2014, and BCE Western Region Division Chief from 2014-2016.  Pl. Stmt. of Add'l Facts at ⁋ 157; Def. SOMF, ⁋ 25.

DOC claims Dr. Kelly was not selected for the Director BCE position because she did not fully answer questions during her interview.  Def. SOMF, ⁋ 28.  Dr. Kelly disputes this fact.  Pl. Resp. to Def. SOMF, ⁋ 28.  Further, DOC claims Ms. Fazio was more qualified for the Director BCE position based on her eight years of experience in the education field with more than four years of experience as a school principal along with her more recent and lengthy experience in education administration.  *Id.* at ⁋ 30-31.  Dr. Kelly claims Ms. Fazio was not qualified for the BCE Director position because she did not have a master's degree with major coursework in education administration.  Pl. Resp. to Def. SOMF, ⁋ 30.

Dr. Kelly alleges that, following Ms. Fazio's appointment as Director BCE, Ms. Fazio asked another employee, Mr. Gent, to spy on Dr. Kelly.  Pl. Stmt. of Add'l Facts, ⁋⁋ 187-88.  DOC denies these allegations.   Def. Resp. to Pl. Add'l Facts, ⁋⁋ 187-88.  In support of her allegations, Dr. Kelly references, among other things, an email sent to Ms. Fazio from Mr. Gent which stated, "FYI – Dr. Kelly was not present at work during my visit to SCI Greene."  Pl. Stmt. of Add'l Facts, ⁋ 190.  Ms. Fazio replied to this email but deleted her reply email.  *Id.* at ⁋ 191.  Plaintiff seeks a spoliation charge concerning the deletion of this email.  *Id.*

On June 30, 2016, following Ms. Fazio's appointment as the Director BCE, Dr. Kelly filed an EEOC Intake Questionnaire alleging race discrimination and retaliation.  *Id.* at ⁋ 271.  On September 6, 2016, Dr. Kelly filed a formal charge of discrimination with the EEOC under EEOC Charge 533-2016-1136.  *Id.* ⁋ 271; Def. SOMF ⁋ 36.

### 2. 2016 Western Region EAM Position

On August 11, 2016, Dr. Kelly applied for the Western Region EAM position that was recently vacated by Ms. Fazio due to Ms. Fazio's new appointment as Director BCE. *Id.* at ¶¶ 38-39. The position sought an individual with "six years of professional experience in education including at least four years in educational administration." Pl. Stmt. of Add'l Facts ¶ 171. Dr. Kelly was interviewed for the position before Ms. Fazio and Executive Deputy Secretary George Little. *Id.* at ¶ 43. Upon receipt of the candidates' applications, Ms. Fazio emailed human resources asking "[w]here does Dr. Kelly fall in this?" *Id.* at ¶ 181. Human resources responded that Dr. Kelly "would be equal to all of the other qualified candidates." *Id.* at ¶ 182.

Eight candidates were interviewed for the position in total, and Dr. Kelly was ranked (by the interviewers as sixth out of the eight candidates. *Id.* at ¶ 48. Of the eight candidates, five were white and three were African American. Pl. Stmt. of Add'l Facts, ¶ 212. Anna Marie Swanlek, a white female, was ultimately chosen for the Western Region EAM position. Def. SOMF, ¶ 51. Ms. Swanlek has been employed by the DOC since 2000 and was employed as an Adult Basic Education Teacher from 2000-2008 and a Corrections School Principal from 2008-2016. *Id.* at ¶ 50.

DOC contends that Ms. Swanlek was chosen for the position due to her knowledge and experience with the relevant policies and guidelines, her work experience, her recent experience as an administrator, her experience with GED testing and with the Commonwealth Secondary Diploma Program, and her demonstrated passion for education programs. *Id.* at ¶¶ 49, 52-53. DOC further contends that Dr. Kelly was not chosen for the Western Region EAM position because Dr. Kelly spoke about her own background during her interview instead of the programs themselves. *Id.* at ¶ 45. Dr. Kelly disputes these facts and argues DOC's justifications for hiring

Ms. Swanlek are not supported by the interview documents prepared by Ms. Fazio or Mr. Little or the documents submitted by DOC to the EEOC. Pl. Resp. to Def. SOMF, ⁋⁋ 52-53.

On January 31, 2017, following the hiring of Ms. Swanlek, Dr. Kelly filed an EEOC Intake Questionnaire alleging ace discrimination and retaliation. Pl. Stmt. of Add'l Facts ⁋ 273. On January 31, 2017, Dr. Kelly filed a formal charge of discrimination with the EEOC under EEOC Charge 533-2016-1260. *Id.* at ⁋ 274; Def. SMOF, ⁋ 56.

### 3. 2014 Western Region EAM Position

Outside of the two 2016 failure to hire issues in this case, Dr. Kelly was also passed over for the Western Region EAM position in 2014. The interview panel for this position consisted of Ms. Moore Smeal, who was on the interview panel for Dr. Kelly's interview for the Director BCE position, and former BCE Director Steven Day. Pl. Stmt. of Add'l Facts, ⁋⁋ 16, 22. Ms. Fazio was also selected over Dr. Kelly for the 2014 Western Region EAM position. Pl. Stmt. of Add'l Facts, ⁋ 18. While not directly at issue for purposes of this lawsuit, Dr. Kelly alleges she was denied this position due to race discrimination. *Id.* at ⁋ 21. DOC denies this allegation. Def. Resp. to Pl. Stmt. of Add'l Facts, ⁋ 21.

However, at issue in this litigation, a civil service hearing was held in February 2015 concerning Dr. Kelly's race discrimination claim on the 2014 Western Region EAM position. Pl. Stmt. of Add'l Facts, ⁋ 30. Ms. Moore Smeal and Ms. Fazio testified at this hearing. *Id.* On December 18, 2015, the Civil Service Commission ("CSC") found Dr. Kelly had not proven discrimination concerning the 2014 Western Region EAM position and Dr. Kelly appealed this decision in January 2016 to the Pennsylvania Commonwealth Court. *Id.* at 32, 34. The December 18, 2015 CSC decision was later affirmed by the Pennsylvania Commonwealth Court in February 2017. *Id.* at 34. In November 2015, Dr. Kelly also filed a *pro se* federal lawsuit in the Western

District of Pennsylvania alleging Title VII race discrimination after she was passed over for the 2014 Western Region EAM position. *Id.* at ⁋ 35. That lawsuit was brought against DOC and also named Ms. Moore Smeal as a defendant along with other employees of DOC. *Id.* at ⁋ 36. That lawsuit was dismissed in April 2017. *Id.* at ⁋ 39.

## II.     Legal Standard

Summary judgment may be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998).

The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

### III.    Discussion

### A.    Discrimination Claims (Counts I and III)

Title VII provides a cause of action for race discrimination in employment.  Under Title VII, "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire . . . any individual ... because of such individual's race...." 42 U.S.C. § 2000e-2(a).   A plaintiff may prove race discrimination under Title VII "by direct evidence as set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228 [ ] (1989), or indirectly through the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [ ] (1973)."  *Knight v. Delaware Econ. Dev. Office*, 83 F. Supp. 3d 606, 613 (D. Del. 2015).  Dr. Kelly has not proffered direct evidence of discrimination, so the *McDonnell Douglas* framework applies.

#### 1.    *Prima Facia Case*

At the first step of the *McDonnell Douglas* framework, "the plaintiff must establish a *prima facie* case of discrimination."  *Reeves*, 530 U.S. at 142 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)).   To establish a *prima facie* case of employment discrimination under Title VII, "the plaintiff must show (1) [she] belongs to a protected class, (2) [she] was qualified for the position, (3) [she] was subjected to an adverse employment action . . ., and (4) the circumstances of the adverse action 'give rise to an inference of unlawful discrimination.'" *Mitchell v. City of Pittsburgh*, 995 F. Supp. 2d 420, 430 (W.D. Pa. 2014) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)).

The Court will address whether Plaintiff has established a *prima facie* case for race discrimination as to the Director BCE and Western Region EAM positions together as the analysis is the same. Here, it is undisputed that Dr. Kelly is an African American and is therefore a member of a protected class.  Def. SOMF, ₱ 10.  Further, it is undisputed that Dr. Kelly was qualified for

both the BCE Director position and the Western Region EAM position.  Pl. Stmt. of Add'l Facts, ¶¶ 48-49, 173.

The parties, therefore, dispute the third and fourth elements of Dr. Kelly's *prima facie* case—whether Dr. Kelly suffered an adverse employment action and whether the circumstances of the adverse employment action give rise to an inference of unlawful discrimination.

DOC maintains that Dr. Kelly did not suffer an adverse employment action as the decision to hire another qualified candidate over Dr. Kelly was not based on Dr. Kelly's race.  Def. Resp. to Pl. Addt'l Facts, ¶¶ 50, 174.  "'An adverse employment action' under Title VII [is] an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'"  *Storey v. Burns Intern. Security Services*, 390 F.3d 760, 764 (3d Cir. 2004) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)).  The fact that Dr. Kelly was not hired for the BCE Director position and the Western Region EAM position is evidence that Dr. Kelly suffered an adverse employment action.  *See Foxworth v. Pennsylvania State Police*, 402 F.Supp.2d 523, 532 (E.D. Pa. 2005) (finding the plaintiff established he suffered an adverse employment action by demonstrating he was not hired for the position at issue).

The fourth element of the *prima facie* case calls for "evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion."  *O'Connor v. Cons. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) (citing *Teamsters v. United States*, 431 U.S. 3224, 358 (1977)).  A plaintiff can satisfy this burden by showing that she was replaced by someone outside of the protected class, or that someone outside of her protected class was treated more favorably; however, neither type of evidence is necessary if the plaintiff offers other evidence establishing an inference of discrimination.  *See Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 355 (3d Cir. 1999); *see also Kimble v. Morgan Properties*, 241

Fed.Appx. 895, 898 (3d Cir. 2007) (holding a plaintiff satisfies the fourth element of her prima facia case where she established "a person outside of the protected class is promoted over a qualified member of the protected class"). Here, Dr. Kelly has submitted evidence that despite her credentials, she was not selected for the positions at issue and the positions were filled by persons outside her protected class. This is sufficient evidence to establish element four and, therefore, Dr. Kelly has established a *prima facie* case of discrimination as to both the Director BCE and Western Region EAM positions.[1]

### 2. Legitimate Nondiscriminatory Reason

After a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant "to 'produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.'" *Reeves*, 530 U.S. at 142 (quoting *Burdine*, 450 U.S. at 254). "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Id.* at 142 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 509).

Here, as discussed below, DOC argues that the two individuals hired over Dr. Kelly for the positions at issue were more qualified for the positions based not only on their qualifications, but their interviews as well.

---

[1] In addition to the evidence above, Dr. Kelly has filed a Motion to Supplement the Summary Judgment Record with additional disparate impact evidence to support her *prima facie* case. Pl. Mot. To Supp., ECF No. 80. Specifically, Dr. Kelly presents evidence that DOC treated a white employee with a doctorate degree more favorably than Dr. Kelly because DOC announced the employee's receipt of her doctorate degree and acknowledged that the employee possessed a doctorate degree when she was named Acting Secretary of the DOC. *Id.* at 1-2. The Court is not receptive to supplementing the record at this late stage of the proceedings. Discovery closed in June 2021 and the motion for summary judgment was filed on March 23, 2021. *See Garcia v. Newtown Tp.*, 483 Fed.Appx. 697, 705 n.25 (3d Cir. 2012) (where the Third Circuit affirmed the District Court's denial of the plaintiff's motion to supplement the record when discovery "had closed and the motions for summary judgment had been filed"); *see also Edwards v. Pennsylvania Turnpike Com'n*, 80 Fed.Appx. 261, 265 (3d Cir. 2003) (finding the District Court did not abuse its discretion in denying the plaintiff's motion to supplement the summary judgment record when the motion was made more than five months after discovery had closed and the evidence did not alter the decision of the District Court). Further, the Court finds that even if it allowed Dr. Kelly to supplement the record, the evidence presented would not change the Court's opinion with respect to DOC's motion for summary judgment. Therefore, Dr. Kelly's Motion to Supplement the Summary Judgment Record is denied.

### a. Director BCE position

DOC has submitted ample evidence that Ms. Fazio was more qualified for the Director BCE position.  DOC acknowledges Dr. Kelly's academic achievements and credentials but noted Ms. Fazio's eight years of experience in the education field, including more than four years as a school principal, and Ms. Fazio's more recent and lengthy experience in education administration compared to Dr. Kelly.  Brief in Supp't 7.  DOC further argues that Ms. Fazio performed better at her interview compared to Dr. Kelly as Dr. Kelly did not fully answer questions during her interview.  *Id.* at 6.  Therefore, DOC has offered legitimate, nondiscriminatory reasons for not selecting Dr. Kelly for the Director BCE position.

### b. Western Region EAM Position

DOC has also offered evidence that Ms. Swanlek was more qualified for the Western Region EAM position as compared to Dr. Kelly.  DOC argues that Ms. Swanlek had more recent and current experience as an administrator as compared to Dr. Kelly because Ms. Swanlek served in a principal role and was active in the administrative components of that role.  Brief in Supp't 7. Further, that Ms. Swanlek was more versed in GED testing and the Commonwealth Secondary Diploma Program.  *Id.*  DOC argues that Dr. Kelly did not have the same administrative experience.  *Id.*  Lastly, DOC argues Dr. Kelly spoke about herself at the interview while Ms. Swanlek spoke about the programs and provided an in-depth vision for the department.  *Id.* at 7-8. Therefore, DOC has offered legitimate, nondiscriminatory reasons for not selecting Dr. Kelly for the Western Region EAM position.

### 3. Pretext

If the defendant offers a legitimate nondiscriminatory reason, then "the plaintiff may attempt to establish that [she] was the victim of intentional discrimination 'by showing that the

employer's proffered explanation is unworthy of credence.'" *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 255 n.10).  To make this showing of pretext, a plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).  "[T]he plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case" if that evidence is sufficient "to discredit the defendant's proffered reasons." *Id.*  The trial court may not make credibility determinations or weigh the evidence of pretext against the asserted nondiscriminatory reason.  *See Burton v. Teleflex, Inc.*, 707 F.3d 417, 428–30 (3d Cir. 2013) (vacating summary judgment where the trial court "improperly made credibility determinations") (citing *Doe v. Luzerne Cty.*, 660 F.3d 169, 175 (3d Cir. 2011)).  If a reasonable factfinder *could* find for plaintiff on the issue of pretext, then summary judgment is not appropriate.

Dr. Kelly argues she can establish pretext for both positions under both of the prongs listed above.

### a.  Director BCE Position

#### i.  Evidence under which a factfinder could disbelieve DOC's legitimate reasons

To begin, Dr. Kelly alleges she was objectively more qualified for the Director BCE position when compared to Ms. Fazio or the other candidates.  The Court agrees that Dr. Kelly has shown she was qualified for the Director BCE position and, in some respects, may even be more qualified than other candidates.  For instance, Dr. Kelly was the only candidate with a Doctorate degree.  Brief in Opp'n 7; Pl. Stmt. of Add'l Facts, ¶ 95.  However, while Dr. Kelly's credentials

prove she was qualified for the Director BCE position, they do not prove that DOC's reasons for hiring another candidate were pretextual. This is because "[t]he question is not whether the employer made the best, or even a sound, business decision; it is [instead] whether the real reason is discrimination." *Dooley v. Roche Lab Inc.*, no. 07-1771, 2008 WL 1851785, at **3 (3d Cir. April 28, 2008) (quoting *Keller v. Orix Credit Alliance*, 130 F.3d 1101, 1109 (3d Cir. 1997)).

Next, Dr. Kelly argues that Ms. Fazio was not qualified for the position at issue and therefore DOC's reasons for selecting Ms. Fazio were pretextual. Dr. Kelly argues Ms. Fazio was the only candidate without a master's degree and lacked major course work in education administration which were qualities sought from candidates in the Director BCE position posting. Brief in Opp'n 6. Dr. Kelly further argues Ms. Fazio lied on her resume when she claimed she took graduate courses for eight years, when she actually only took courses for two years. *Id.* at 7. DOC acknowledges Ms. Fazio was the only candidate without a master's degree and the discrepancy in Ms. Fazio's resume but disputes the remainder of Dr. Kelly's arguments. Def. Resp. to Pl. Stmt. of Add'l Facts, ¶¶ 78-79. The evidence presented by Dr. Kelly fails to dispute DOC's reasons for hiring Ms. Fazio over Dr. Kelly. The arguments presented by Dr. Kelly concerning Ms. Fazio's lack of master's degree and lack of course work in education do not dispute DOC's arguments that its decision was based on Ms. Fazio's experience and interview performance. DOC did not state that it based its decision on Ms. Fazio's education experience. Further, Dr. Kelly must do more than show DOC's decision to hire Ms. Fazio may have been wrong; Dr. Kelly must present evidence to disprove DOC's proffered reasons for hiring Ms. Fazio. *See Dooley*, 2008 WL 1851785 at **3; *see also Cross v. New Jersey*, 613 Fed.Appx. 182, 185 (3d Cir. 2015) (finding a plaintiff's arguments that she was a more qualified candidate only went to

whether the defendant was wrong or mistaken in its hiring, not whether the defendant was discriminatory in its hiring).

Next, Dr. Kelly argues DOC's reliance on Dr. Kelly's interview performance is evidence of pretext because a defendant's reliance on subjective criteria, such as interview performance, gives rise to an inference of pretext. Brief in Opp'n 8. Further, Dr. Kelly states that Mr. Glunt told Dr. Kelly she did a good job following her interview, which calls into question DOC's claims that Dr. Kelly performed poorly in her interview. *Id.* at 9. The Third Circuit has found that a defendant may rely on a candidate's interview performance and that this reliance in itself is not evidence of pretext. *See Thompson v. Bridgeton Bd. Of Educ.*, 613 Fed.Appx. 105, 108 (3d Cir. 2015) (plaintiff's argument that the defendant's interview process was a pretext for discrimination was not supported by evidence that the defendant's non-discriminatory reason was unworthy of credence). Further, a statement by an interviewer that Dr. Kelly did a good job at her interview is merely a polite statement and does not contradict DOC's arguments that Dr. Kelly performed poorly at her interview. *See Cross v. New Jersey*, 613 Fed.Appx. 182, 185 (3d Cir. 2015) (interviewer's statements that the panelists were impressed with the interviewees were nothing more than polite statements and did not contradict the defendant's position that the plaintiff did not interview well).

Dr. Kelly further argues that DOC's reliance on the best fit rationale to support its decision to hire Ms. Fazio is susceptible to abuse and likely to mask pretext. Brief in Opp'n 8. There is no evidence from DOC that it based its decision not to hire Dr. Kelly on Ms. Fazio being a better fit. Instead, DOC has stated it relied on the candidates', including Dr. Kelly and Ms. Fazio's, experience and interview performance when determining who should be selected for the Director BCE position.

### ii.   Evidence of an invidious discriminatory reason

As evidence of racial discrimination, Dr. Kelly submits statistical data that she alleges confirm a racial imbalance against African Americans.  Brief in Opp'n 10.  The statistical data submitted shows the percentage of African Americans employed in the BCE from 2012 to 2019 and the percentage of African Americans employed by BCE in senior level positions.  *Id.* at 10-11.  While the Court acknowledges the statistical data submitted by Dr. Kelly, the Third Circuit has held that "while 'statistical evidence of an employer's pattern and practice with respect to minority employment may be relevant to a showing of pretext,' [the Court] ha[s] explained that conclusions cannot fairly be drawn from 'raw numerical comparisons' in the absence of 'analysis of either the qualified applicant pool or the flow of qualified candidates over a relevant time period.'"  *Dooley*, 2008 WL 1851785 at ** 3 (quoting *Ezold v. Wolf, Block, Schorr & Solis—Cohen*, 983 F.2d 509, 542-543 (3d Cir. 1992)).

As such, the Court holds that Dr. Kelly has failed to present evidence of pretext and DOC's motion for summary judgment is granted as to Count I.

### b.   Western Region EAM Position

For the Western Region EAM position, Dr. Kelly presents numerous arguments as to why a factfinder could disbelieve DOC's nondiscriminatory reasons.  The Court will address two of these arguments below that are necessary to find Dr. Kelly has met her burden of establishing pretext.

First, Dr. Kelly argues a jury could reject DOC's argument that Ms. Swanlek was recommended because of her knowledge of DOC, and BCE policies and guidelines when Ms. Fazio admitted during her deposition that Dr. Kelly had more experience with the BCE than Ms. Swanlek.  Br. in Opp'n 15.  Second, Dr. Kelly argues that while DOC relies on Ms. Swanlek's

training and experience in education administration, Ms. Fazio testified that Dr. Kelly had more training in education administration than Ms. Swanlek and that she could not state whether Dr. Kelly had more experience in education administration than Ms. Swanlek. *Id.* at 16-17.

This evidence presented by Dr. Kelly is enough to show that DOC's proffered non-discriminatory reasons for hiring Ms. Swanlek may not have been its true reasons and instead were pretextual. *See Bray v. Marriott Hotels*, 110 F.3d 986, (3d Cir. 1997) (finding evidence of pretext where the plaintiff presented evidence of discrepancies in how the candidates were evaluated based on the criteria identified by the defendant as relevant in its decision-making process). Therefore, the Court will deny DOC's motion as to Count III.

### B.  Retaliation Claims (Counts II and IV)

Dr. Kelly's Title VII retaliation claims are also governed by the McDonnell Douglas burden-shifting framework outlines above in *supra* III.A. To prevail on a Title VII retaliation claim, a plaintiff must prove that "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).

A plaintiff has participated in a protected activity when that plaintiff has "participated in certain Title VII proceedings (the 'participation clause') or has opposed discrimination made unlawful by Title VII (the 'opposition clause')". *Id.* at 341. The applicable Title VII proceedings include an investigation, proceeding, or hearing under Title VII following the creation of an EEOC charge. *Howard v. Blalock Elec. Service, Inc.*, 742 F.Supp.2d 681, 704 (W.D. Pa 2010).

As to the third element, there are two ways to prove a causal connection: "(1) where the time between the complaint and the alleged retaliation is so close as to be 'unusually suggestive,'. . .; and (2) timing plus other evidence." *Brugh v. Mount Aloysius College*, 432 F.Supp.3d 566, 584 (W.D. Pa. 2020) (quoting *Williams v. Phila. Housing Auth. Police Dep't.*, 380 F.3d 751, 760 (3d Cir. 2004). Timing that is "unusually suggestive" is subjective but is generally not more than a few days. *Id.*

If a plaintiff establishes a *prima facia* case of retaliation under Title VII, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for failing to hire the plaintiff. *Id.* at 706. "The defendant need not persuade the court that it was actually motivated by the proffered reasons, but it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* (quoting *Burdine*, 450 U.S. at 248).

Then, once the defendant has offered a legitimate non-discriminatory reason, the plaintiff must demonstrate that the legitimate reason is merely a pretext for unlawful retaliation. *Brugh*, 432 F.Supp.3d at 585.

### 1. *Prima Facie Case*

Here, prior to applying for the BCE Director position in April 2016 and the Western Region EAM position in August 2016, Dr. Kelly filed a charge of racial discrimination with the Civil Service Commission in September 2014. Br. in Opp'n 2. She litigated that case until December 2015 and then appealed the CSC opinion to the Commonwealth Court in January 2016 and litigated that appeal until February 2017. *Id.* This is sufficient evidence to establish the first element that Dr. Kelly participated in an activity protected by Title VII. *See Baur v. Crum*, 882 F.Supp.2d 785, 804 (E.D. Pa. 2012) (where the court considered a plaintiff's civil service commission charge as protected activity but denied the plaintiff's retaliation claim on other grounds). Further, at no point

has DOC argued that Dr. Kelly's litigation before the CSC and the state and federal courts are not protected activities under Title VII.  As to the second element, it has been established that Dr. Kelly suffered an adverse employment action when she was not promoted to the BCE Director position or the Western Region EAM position.  *See supra* III.A.1.

As to the third element of Dr. Kelly's *prima facie* case, DOC argues Dr. Kelly cannot make a showing of the requisite suggestive timing or other evidence to demonstrate a causal connection.  Br. in Supp. 12.  Dr. Kelly argues that at the time of DOC's failure to hire her, she had a pending Commonwealth Court appeal and federal lawsuit which are evidence of timing.  Br. in Opp'n 3.

Whether or not the timing alone is unusually suggestive of retaliation, Dr. Kelly has presented additional evidence in support of her *prima facie* case.  As to the Director BCE position, Dr. Kelly further argues that Ms. Moore Smeal was aware of Dr. Kelly's protected conduct during her interview for the Director BCE position as Ms. Moore Smeal testified in the CSC hearing, and, in fact, was a named defendant in the federal lawsuit.  *Id.* at 3.  Dr. Kelly also argues that the Director BCE who was in the position in January of 2016 stated that he would never hire Dr. Kelly as she would be watching everything he did.  *Id.* at 4.  Lastly, Dr. Kelly has presented evidence that her race discrimination claims were discussed among the employees at the BCE Central Office when Dr. Kelly interviewed for the Director BCE position.  *Id.*

As to the Western Region EAM position, Dr, Kelly presents evidence that when the candidate list was emailed to Ms. Fazio, Ms. Fazio asked "[w]here does Dr. Kelly fall in this?" which resulted in a response from Human Resources that Dr. Kelly "would be equal to all of the other qualified candidates."  *Id.* at 12-13.

The Court agrees that the timing of the adverse action, in consideration of the pending Commonwealth Court case and federal lawsuit, along with the other evidence presented by Dr.

Kelly are sufficient to establish a *prima facia* case of retaliation.  Therefore, the burden shifts to DOC to present a legitimate non-discriminatory reason for its failure to hire Dr. Kelly.

### 2.   *Legitimate Nondiscriminatory Reasons*

While DOC has not explicitly stated any legitimate nondiscriminatory reasons for its failure to hire Dr. Kelly under a theory of retaliation, *see* Br. in Supp. 9-13, the Court notes that the conduct underlying DOC's failure to hire Dr. Kelly under a theory of retaliation is identical to the conduct underlying its conduct under a theory of discrimination.  Therefore, the Court can reasonably conclude that DOC intended for the Court to refer to its previously proffered legitimate nondiscriminatory reasons offered under a theory of discrimination here under a theory of retaliation.

For the reasons stated in *supra* III.A.2., the Court finds that DOC has offered legitimate nondiscriminatory reasons for its failure to hire Dr. Kelly as to the BCE Director position and as to the Western Region EAM position.

### 3.   *Pretext*

As DOC has presented evidence of legitimate nondiscriminatory reasons for its failure to hire Dr. Kelly, the burden shifts to Dr. Kelly to present evidence that these reasons are pretextual. *See Brugh*, 432 F.Supp.3d at 585.  Dr, Kelly has not presented additional evidence of pretext outside of the evidence presented in support of her race discrimination claims at Count I and III. Therefore, for the reasons stated in *supra* III.A.3., the Court finds that Dr. Kelly has presented sufficient evidence of pretext with respect to the Western Region EAM position but has not presented sufficient evidence of pretext with respect to the BCE Director position.

Therefore, the Court will grant DOC's motion for summary judgment as to Count II and will deny DOC's motion for summary judgment as to Count IV.

### C.  Disparate Impact Claim (Count V)

DOC argues summary judgment should be granted as to Count V because Dr. Kelly failed to raise a disparate impact claim in her EEOC charges.  Brief in Supp't 14.  Generally, "[t]he parameters of a civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the EEOC."  *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013).  When determining whether a disparate impact claim arises out of an EEOC charge for discrimination, the court looks to whether the plaintiff describes only the treatment she received in her charge for discrimination or whether the plaintiff describes treatment towards other workers as well.  *See Ptasznik v. University of Pennsylvania*, civil action no. 10-3941, 2012 WL 699455, at *10 (E.D. Pa. Feb. 29, 2012) (dismissing plaintiff's disparate impact claim where the plaintiff only raised allegations concerning actions taken against himself in the EEOC charge and during the EEOC investigation); *cf. Houle v. Walmart Inc.*, 447 F.Supp.3d 261, 276 (M.D. Pa. 2020) (finding that where a plaintiff referenced treatment towards other employees in her EEOC charge, she did not fail to exhaust her disparate impact claim even though it was not specifically raised).

DOC argues that Dr. Kelly's EEOC charges fail to reference a claim of disparate impact and fail to identify other similarly situated employees or a facially neutral policy implemented by DOC.  Brief in Supp't 15.  In opposition, Dr. Kelly asserts her EEOC charge concerning the Director BCE position included a questionnaire which incorporated the complaint of Raphael Chieke.  Brief in Opp'n 20.  The questionnaire asked Dr. Kelly to list any witnesses to the alleged discriminatory incident and in response Dr. Kelly requested the EEOC refer to the attached complaint of Raphael Chieke.  *See* Pl. Appendix, Exhibit 67.  However, the complaint of Mr.

Chieke was not included as an Exhibit to Dr. Kelly's Brief and Dr. Kelly has provided no information as to the contents of this complaint and whether it involves claims similar to Dr. Kelly's. Therefore, Dr. Kelly has failed to create a question of fact as to whether her EEOC charge identifies other similarly situated employees. DOC's motion for summary judgment is granted as to Count V.

### D. Spoliation

In her Brief in Opposition to DOC's motion for summary judgment, Dr. Kelly seeks spoliation charges for Ms. Moore Smeal's missing interview notes concerning the Director BCE position and for a missing email sent by Ms. Fazio to her subordinate concerning Dr. Kelly's attendance. Br. in Supp. 4, 13. Dr. Kelly raised this argument for the first time in her Brief in Opposition and she did not file any cross-motion for spoliation charges. Therefore, while the Court acknowledges Dr. Kelly's requests for spoliation charges, it will not address such arguments as "[s]ummary judgment is not the appropriate procedural mechanism for resolving discovery disputes." *Yeisley v. Pennsylvania State Police*, No. 3:05-CV-01650, 2010 WL 4791660, at *14 (M.D. Pa. Nov. 18, 2010) (quoting *Shipe v. Haverford Twp.*, Nos. 09-00719, 09-00720, 2010 WL 571836, at *3 n. 3 (E.D. Pa. Feb. 16, 2010)).

Further, in her Brief in Opposition, Dr. Kelly failed to raise any arguments in support of her requests for spoliation charges, including facts that DOC intentionally disposed of the above materials. Accordingly, Dr. Kelly's requests for spoliation charges are dismissed without prejudice.

### IV.    Conclusion

For the reasons discussed above, the Court will grant DOC's motion for summary judgment as to Counts I, II, and V and will deny DOC's motion for summary judgment as to Counts III and

IV.  Further, the Court will deny Dr. Kelly's requests for spoliation charges against DOC without prejudice.  Finally, the Court will deny Dr. Kelly's Motion to Supplement the Summary Judgment Record.  An appropriate Order of Court follows.

BY THE COURT:

*/s/ Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: March 14, 2023

cc: All counsel of record